# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

PATRICK S. DEBROUX,

     Plaintiff,

v.                                                                No.

RYAN D. MCARTHY, in                              **JURY TRIAL DEMANDED**
His Official Capacity as
SECRETARY OF THE ARMY,

     Defendant.

## <u>COMPLAINT</u>

COMES NOW the Plaintiff, Patrick S. Debroux ("Plaintiff"), by and through the undersigned counsel, CARRILLO LAW FIRM, P.C. (Raúl A. Carrillo, Jr. and Steven E. Jones), and hereby submits his original Complaint, as follows:

### Summary

1.      This is an action brought by Plaintiff, Patrick S. Debroux, against Defendant Mark T. Esper, for violations of Plaintiff's constitutional and other rights stemming from race discrimination, age discrimination, and reprisal committed by Department of the Army employees in the workplace at the Army Research Laboratory's tenant activities at U.S. Army White Sands Missile Range, New Mexico.

2.      Specifically management employees favored the selection of Hispanic individuals over other, non-Hispanic individuals in the selection and promotion process; groomed Hispanic individuals for promotion; improperly ranked candidate for promotion; altered the candidate selection criteria to favor Hispanic applicants; favored younger applicants over older applicants in the hiring and promotion process; retaliated against employees for making complaint of unlawful discrimination; and committed other violation of law to be proven at trial.

- 1 -

**Parties**

3.      Plaintiff is a resident of Las Cruces, New Mexico.

4.      At all times relevant to this Complaint, Plaintiff has been employed by the Department of the Army Research, Development and Engineering Command, Army Research Laboratory, a tenant activity of U.S. Army White Sands Missile Range, New Mexico.

5.      Defendant Ryan D. McCarthy is the Secretary of the Army of the United States of America. He is the responsible agency official regarding this Complaint and is being sued in his capacity as the responsible agency official on behalf of the Department of the Army as Plaintiff's employer.

**Jurisdiction**

6.      This Court has original jurisdiction pursuant to several federal laws including (but not limited to) Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination in Employment Act (as amended), and other federal laws governing discrimination, retaliation, and related matters.

**Venue**

7.      Venue is proper in the United States District Court for the District of New Mexico, given that Plaintiff was employed by the Department of the Army at U.S. Army White Sands Missile Range, New Mexico at all times relevant to this Complaint.

**Exhaustion of Administrative Remedies**

*Complaint ARARL17AUG02934*

8.      The unlawful employment action at issue, namely the non-selection of Plaintiff for a position for which he was qualified, occurred on or around July 31, 2017.

9.      Plaintiff timely participated in pre-complaint counseling beginning on or about August 23, 2017 and completed on or about November 14, 2017 with EEO counselor Royce Slade Morton.

10.      The Department of the Army issued a Notice of Right to File Formal Complaint of Discrimination on or around November 22, 2017.

11.      Plaintiff filed a formal EEO complaint for case number ARARL17AUG02934 on or around December 5, 2017.

12.      The agency conducted its investigation from May 14, 2018 through June 22, 2018.

13.      Plaintiff received the investigative file for EEO case number ARARL17AUG02934 on or about July 13, 2018.

14.      Plaintiff timely requested a Final Army Decision after receipt of the investigative file on or about July 31, 2018.

15.      Plaintiff has not received a Notice of Final Army Decision for EEO case number ARARL17AUG02934 despite numerous requests from the Plaintiffs attorneys, the most recent of which was August 1, 2019.

16.      Plaintiff has the right to file this lawsuit at the present time on this EEO complaint.

*Complaint ARARL18NOV04531*

17.      The unlawful employment action at issue, namely the non-selection of Plaintiff for a position for which he was qualified, occurred on or around October 25, 2018.

18.     Plaintiff timely participated in pre-complaint counseling beginning on or about November 6, 2018 and completed on or about January 28, 2019 with EEO counselor Joyce A. Williams.

19.     The Department of the Army issued a Notice of Right to File Formal Complaint of Discrimination on or around February 4, 2019.

20.     Plaintiff filed a formal EEO complaint for case number ARARL18NOV04531 on or around February 19, 2019.

21.     The agency conducted its investigation from May 15, 2019 through June 19, 2019.

22.     Plaintiff received the investigative file for EEO case number ARARL18NOV04531 on or about July 29, 2019.

23.     Plaintiff timely requested a Final Army Decision after receipt of the investigative file on or about August 26, 2019.

24.     The deadline for the Department of the Army to issue its Final Army Decision in this matter was October 28, 2019.

25.     Plaintiff has not received the requested Final Army Decision within the sixty (60) day deadline.

26.     Plaintiff has the right to file this lawsuit at the present time on this EEO complaint.

## Factual Allegations Common to All Claims

27.     As of July 31, 2017, Plaintiff was an Electronics Engineer for the U.S. Army Research Laboratory, Survivability/Lethality Analysis Directorate, physically located at U.S. Army White Sands Missile Range, New Mexico.

28.     Plaintiff never had any significant disciplinary history or significant negative performance evaluations prior to the filing of his first formal complaint, ARARL17AUG02934, on December 5, 2017.

29.     Plaintiff's employment with the Army has been satisfactory or better throughout the period of his employment.

30.     At the time of the incidents described in this Complaint, the Department of the Army had several policies and procedures regarding non-discrimination, non-retaliation, and related matter in the workplace.

31.     The above policies and procedures were clearly posted in Plaintiff's workplace and throughout Department of the Army Facilities at White Sands Missile Range as of 2017 and at all other relevant times.

32.     It was clear to Plaintiff's supervisor and other superior Department of the Army officials that the above policies and procedures should be followed and that employees should be afforded protections consistent with federal law.

33.     Defendant McCarthy / Department of the Army failed to abide by their obligations under Department of the Army policies and procedures governing non-discrimination, non-retaliation, and related matter in the workplace.

34.     As of 2017, a pattern or practice had developed within the Army Research Laboratory's tenant activities at White Sands Missile Range to select individuals of Hispanic ethnicity to serve in leadership positions, regardless of whether these individuals were the most qualified individuals for the positions.

35.     Upon information and belief, Hispanic management officials used unlawful and discriminatory policies under the auspices of affirmative action, to the point

36. At the time of the discriminatory employment action the CEPD-WSMR workforce was up to 90% Hispanic.

37. At the time of the discriminatory employment action the Core-Competency Leads and Team Leads which make up the technical management within CEPD-WSMR was up to 80% Hispanic.

38. Upon information and belief, management officials believed that the selection of Hispanic individuals over non-Hispanic individuals was a natural and unsurprising outcome of the selection process.

39. Non-Hispanic management officials essentially ratified the actions of Hispanic management officials at U.S. Army White Sands Missile Range, New Mexico, allowing them to continue their unlawful and discriminatory employment practices despite being put on clear notices of these practices.

40. Plaintiff, a White Non-Hispanic male, was part of the racial/ethnic minority at CEPD-WSMR at the time the discriminatory employment actions took place.

41. Regardless of whether Plaintiff was a minority or not, Plaintiff was (and is currently) entitled to equal treatment under the law, including non-discrimination on the basis of race, age, and reprisal.

42. Regardless of whether Plaintiff was a minority or not, Plaintiff was denied equal treatment under the law, including non-discrimination on the basis of race, age, and reprisal.

*Complaint ARARL17AUG02934*

43. On or about April 28, 2017 the position of Interdisciplinary RF Analysis Team-Lead (NEAC170246141939462) was posted by U.S. Army Research, Development and Engineering Command.

44.    Plaintiff applied for a promotion to the posted position in or around May 2017.

45.    Plaintiff was highly qualified for the position. This includes, but is not limited to, the following:

   a.    Holds a Ph.D. in Geophysical Engineering, a Minor in Electrical Engineering, and a Bachelors of Science in Geosciences from the University of Arizona.

   b.    Previous experience as a Technical Lead of a radar/EM modeling and simulation group.

   c.    A published dissertation related to RF analysis.

   d.    Multiple publications in both open literature and technical reports including publications related to RF analysis.

   e.    30+ years of experience in electromagnetics and RF analysis.

   f.    17+ years of said experience is with ARL/SLAD/CEPD-WSMR predominantly in RF theory, analytics, and simulation.

   g.    Plaintiff had other superior qualifications that were not reflected in his rating scores for interview and selection for the position.

46.    Despite his extensive education, experience, and qualifications Plaintiff was not chosen for the promotion.

47.    Plaintiff was more educated, experienced, and qualified for the position than the person who was chosen for the promotion.

48.    The person chosen for the promotion was a less educated and less experienced Hispanic male in his mid-30s.

49.    All other applicants who were interviewed for the position, including the Plaintiff, were White non-Hispanic males in their 50s.

50.     Plaintiff was not chosen because, according to management officials, he did not perform well in a purely subjective verbal sham interview process.

51.     Management used the above sham interview process as a pretext for pre-selection of a preferred candidate or type of candidate, in whole or part, on the unlawful bases of race and age.

52.     Despite his comparative lack of education and experience, and lack of leadership training, the chosen candidate was given scores in this subjective verbal interview which significantly exceeded the other applicants' scores, including Plaintiff's.

53.     The job posting for Interdisciplinary Team Lead includes the following language under the "How You Will Be Evaluated" section of the posting, "Your application package (resumes, supporting documents, and responses to the questionnaire) will be used to determine your eligibility, qualifications, and quality ranking for this position." (Emphasis in original.)

54.     The job posting does not specify a subjective verbal interview would be included in the method of evaluation.

55.     The interview was conducted by a four-member panel of ARL managers, but the interview questions were written by the Chief of RDRL-SLE and approved by Human Resources.

56.     The job posting of interdisciplinary team lead specifies that candidate's evaluation criteria, "You will be evaluated on the basis of your level of competency (knowledge, skills, abilities) in the following areas:

   a.   Knowledge of Survivability/Lethality/Vulnerability (SLV) Electronic Warfare (EW) Analysis

   b.   Skill in Conducting EW Analysis

    c.   Ability to Communicate Orally and in Writing

    d.   Competency in Scientific and Technical Achievement

57.    Plaintiff was superior to the selected candidate in each of the above areas.

58.    The interview questions designed by the Chief of RDRL-SLE did not address any of the four criteria listed on the job posting. None of the questions addressed the candidate's knowledge of SLV EW analysis, skill conducting EW analysis, or competency in scientific and technical achievement.

59.    Further, the interview questions at best tangentially discussed the candidate's ability to communicate orally, but did not at all discuss the candidate's ability to communicate in writing or discuss anything the candidates had previously published.

60.    The interview questions did not address the qualifications listed in the job positing.

61.    The above-described sham interview process was used against Plaintiff and in favor of the selected candidate, in whole or part due to unlawful discrimination on the basis of age and race.

62.    The interview was the most heavily weighted portion of the evaluation, and the decision to grant the promotion was primarily determined by performance in the subjective interview according to the Chief of RDRL-SLE.

63.    The decision to hire the younger and less-qualified Hispanic male candidate over Plaintiff, and other similarly educated and experienced candidates for this position represents a pattern of age and racial discrimination.

64.    There was no legitimate, lawful basis to select a younger and less-qualified Hispanic male candidate on the basis of race or age.

*Complaint ARARL18NOV04531*

65.     On or about July 17, 2018 the position of Interdisciplinary Engineer/Scientist (NEAC189448288792) was posted by the U.S. Army Research, Development and Engineering Command. This position would be a leadership position in the Tactical Tools, Technology, Methodology (T-TTM) program within the SLAD directorate electronic warfare division.  The T-TTM program is under the umbrella of Internal Research & Development (IR&D).

66.     Plaintiff applied for a promotion to the posted position on or about July 27, 2018.

67.     Plaintiff was highly qualified for the position. This includes, but is not limited to, the following:

a.  Holds a Ph.D. in Geophysical Engineering, a Minor in Electrical Engineering, and a Bachelor of Science in Geosciences from the University of Arizona.

b.  Previous experience as a Technical Lead of a radar/EM modeling and simulation group.

c.  A published dissertation related to RF analysis.

d.  Multiple publications in both open literature and technical reports including publications related to RF analysis.

e.  30+ years of experience in electromagnetics and RF analysis.

f.  17+ years of said experience is with ARL/SLAD/CEPD-WSMR predominantly in RF theory, analytics and simulation.

g.  Previous experience leading, working on, and reporting on T-TTM programs.

h.  Previous experience assembling, leading, managing, and reporting on SLAD funded IR&D programs.

      i.   Plaintiff had other superior qualifications that were not reflected in his rating

scores for interview and selection for the position.

68.     Despite his extensive education, experience, and qualifications Plaintiff was not chosen for the promotion.

69.     Plaintiff was more educated, experienced, and qualified for the position than the person who was chosen for the promotion.

70.     The person chosen for the promotion was a less-educated and less-experienced Hispanic male believed to be in his late-20's or early-30's.

71.     Plaintiff was not chosen because, according to management officials, he did not perform well in a purely subjective verbal sham interview process.

72.     Management used the above sham interview process as a pretext for pre-selection of a preferred candidate, in whole or part, on the unlawful bases of race and age.

73.     Despite his comparative lack of education and experience, and lack of leadership experience, the chosen candidate was given scores in this subjective verbal interview which significantly exceeded Plaintiff's.

74.     The job posting for Interdisciplinary Engineer/Scientist includes the following language under the "How You Will Be Evaluated" section of the posting, "Your application package (resumes, supporting documents, and responses to the questionnaire) will be used to determine your eligibility, qualifications, and quality ranking for this position." (Emphasis in original)

75.     The job posting does not specify a subjective verbal interview would be included in the method of evaluation.

76. The interview was conducted by a four-member panel of ARL managers, but the interview questions were written by the Division Chief for the Electronic Warfare Vulnerability Analysis Assessment Division, and approved by EEO.

77. The job posting of Interdisciplinary Engineer/Scientist specifies that candidate's evaluation criteria, "You will be evaluated on the basis of your level of competency in the following areas:

    a.  Leadership

    b.  Research

    c.  Scientific Analysis

    d.  Technical Competence

78. Plaintiff was superior to the selected candidate in each of the above areas.

79. The interview questions designed by the Division Chief only tangentially addressed the Leadership area listed on the job posting. None of the questions addressed the candidate's knowledge or achievements in research, scientific analysis, or technical competence. Further, the interview questions at best tangentially discussed the candidate's ability to communicate orally but did not at all discuss candidate's ability to communicate in writing or discuss anything the candidates had previously published.

80. At best the interview questions addressed the applicant's qualifications in regard to Leadership only.

81. The interview questions did not address the other qualifications listed in the job posting.

82. Applicants were scored only on their performance in the subjective panel interview. Applicants' resumes were used solely to determine whether an applicant was qualified

for an interview, and no significant consideration was given to any applicant's ability, education or experience as recorded in their applications and resumes.

83.    The Division Chief stated that the applicants' resumes did not play a part in the applicant's scoring for the position.

84.    Defendant disregarded its own representations to applicants' and chose to ignore applicants' verifiable years of experience in research, scientific analysis, and competence. Defendant chose to ignore these areas in its interview process to provide younger, less experienced, and less educated Hispanic applicants an advantage over the more experienced, and more educated older non-Hispanic applicants.

85.    The above-described sham interview process was used against Plaintiff and in favor of the selected candidate, in whole or part due to unlawful discrimination on the basis of age, race, and reprisal.

86.    Defendant in this case has exhibited a discriminatory pattern of behavior against employees over the age of 40.

87.    At least one management-level employee of Defendant has stated that old guys should step aside for a younger generation, or a very similar comment.

88.    Plaintiff was retaliated against by the Defendant following his initial EEO complaint (ARARL17AUG02934).

89.    For instance, after making a complaint, Plaintiff was made to change offices and was placed away from his professional colleagues and isolated from fellow researchers.

90.    Plaintiff was moved from his office to a near-empty building for three months. During the last two months in this building the Plaintiff was the only occupant of the building.

91.    During his three-month tenure in the empty building, Plaintiff received no tasking from his supervisors. As a result, Plaintiff received a low performance rating on his performance evaluation for the year.

92.    The low performance rating negatively impacted Plaintiff's year-end bonus and salary increase.

93.    The low performance rating was due, in whole or part, to reprisal for Plaintiff's prior complaints.

94.    Upon information and belief, the low performance rating was due, in whole or part, to discrimination against Plaintiff on the basis of age and race.

95.    Plaintiff was moved again after three months into a solitary office in a laboratory wing of the building, despite his expressed wish to rejoin his colleagues in his old office.

96.    Plaintiff continues to be physically isolated from his colleagues and other researchers and is currently working in a sub-par basement office converted from a laboratory.

97.    Plaintiff has continued to be under tasked and isolated from his colleagues, and received a second lower performance rating than if he had been tasked the same as other similarly situated employees.

98.    Upon information and belief, a culture exists within the Department of the Army of isolating "problem" employees, including employees that have complained against their employers.  This culture has resulted in tangible discrimination against employees, including Plaintiff, for voicing their legitimate concerns to management officials.

99.    This low performance rating, due to isolation and the under-tasking of the Plaintiff, has once again negatively impacted Plaintiff's year end bonuses and salary increases.

100.    Plaintiff received both of these low performance ratings despite competently and successfully performing all task assigned to him in a timely manner.

101.    Prior to his initial EEO complaint Plaintiff had received significantly better performance ratings, and as a result higher bonuses and salary increases.

102.    Plaintiff alleges that the Defendant has / is retaliated against him because of his EEO complaints by intentionally altering his work environment, by under tasking him, and as a result, giving him low performance ratings.

103.    Plaintiff's income has been negatively impacted by the retaliatory actions of the Defendant.

104.    Plaintiff has been subjected to a hostile work environment by the discriminatory and retaliatory actions of the Defendant.

**Count I: Race Discrimination in Violation of Title VII of Civil Rights Act of 1964**
**(All EEO Complaints)**

105.    Plaintiff hereby re-alleges and reincorporates all preceding allegations as if fully set forth herein.

106.    Plaintiff hereby incorporates any and all information already alleged in his EEO investigative files.

107.    Defendant's conduct as alleged herein constitutes discrimination based on race or ethnicity in violation of Title VII of the Civil Rights Act of 1964, as amended.

108.    Defendant was treated less favorably than others similarly situated, on the basis of race or ethnicity.

109.    The stated reasons for Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

110.    Additionally, Defendant's employment policies or practices, including (but not limited to) Defendant's sham interview policy or practice, had a disparate impact on persons of Plaintiffs race and were not necessary to the operation of the Department of the Army.

### Count II: Age Discrimination in Violation of the Age Discrimination in Employment Act
### (All EEO Complaints)

111.    Plaintiff hereby re-alleges and reincorporates all preceding allegations as if fully set forth herein.

112.    Plaintiff hereby incorporates any and all information already alleged in his EEO investigative files.

113.    Defendant's conduct as alleged herein constitutes discrimination based on the Age Discrimination in Employment Act, as amended.

114.    The stated reasons for Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

115.    Additionally, Defendant's employment policies or practices, including (but not limited to) Defendant's sham interview policy or practice, had a disparate impact on persons of Plaintiff's age and were not necessary to the operation of the Department of the Army.

### Count III: Reprisal for Engaging in Protected Activities
### (Complaint ARARL18NOV04531)

116.    Plaintiff hereby re-alleges and reincorporates all preceding allegations as if fully set forth herein.

117.    Plaintiff hereby incorporates any and all information already alleged in his EEO investigative files.

118.    Defendant's actions as described in this Complaint constitute reprisal or retaliation in contravention of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and other applicable laws.

119.    The protected activity includes, but is not limited to, all of the instances of protected activity as described in Plaintiff's EEO investigation files, including filing an EEO complaint; requesting an investigation of the discrimination committed against him; and alleging disparate treatment against his employer based on race or age.

120.    Plaintiff has been subjected to a change in the terms and conditions of his employment based on reprisal, in addition to race and age.  The conduct was severe or pervasive enough to create a work environment that a reasonable person would perceive to be intimidating, hostile or abusive.

121.    Enduring the offensive conduct has become a term or condition of Plaintiff's continued employment.

122.    Additionally, Defendant's employment policies or practices had a disparate impact on persons of Plaintiff's protected status (retaliation) and were not necessary to the operation of the Department of the Army.

### Jury Demand

123.     Plaintiff hereby requests a trial by a jury of his peers of 12 persons, for all claims that may be tried before a jury.

### Prayer for Relief

WHEREFORE, Plaintiff prays for all forms of relief available to him under Title VII and other applicable laws, including but not limited to the following:

a.  Back pay in all forms, including (but not limited to) lost wages, lost overtime opportunities, lost annual and sick leave, other lost benefits (including pension and retirement benefits, Thrift Savings Plan contributions, cafeteria plan benefits, medical benefits, life insurance benefits, and all other benefits);

b.  Front pay in all forms, including all forms listed above;

c.  Pre-judgment interest;

d.  Post judgment interest;

e.  Negative tax consequences;

f.  Selection for a higher-graded position and placement into such position;

g.  Compensatory damages up to and including the maximum extent provided by law (believed to be $300,000 separately for each discrete unlawful act described above, or a higher amount as permitted by law);

h.  Punitive damages to the extent allowed by law;

i.  Medical damages to the extent allowed by law;

j.  Injunctive relief to prohibit the use of the unlawful employment practices committed by the Department of the Army and its employees with regard to Plaintiffs employment;

k.  Preliminary injunctive relief to prevent irreparable harm to Plaintiff;

l.  Make-whole relief to the fullest extent provided by law;

m. Corrective action, including disciplinary action against any and all offending employees, whether known or unknown as of the filing of this Complaint;

n.  Reasonable attorneys' fees and costs for violation of Plaintiffs statutory rights as well as any and all other violations complained of in this Complaint;

o.  Out-of-pocket expenses, incidental damages, and consequential damages;

p.  Any and all damages contained in Plaintiffs investigative file, including damages

disclosed in Plaintiffs compensatory damages affidavits; and

q.  Any and all other damages allowed by law.

Respectfully submitted,

**CARRILLO LAW FIRM, P.C.**

By  */s/ Steven E. Jones*
   Raúl A. Carrillo, Jr. (raul@carrillolaw.org)
   N.M. Bar No. 5600
   Steven E. Jones (sjones@carrillolaw.org)
   N.M. Bar No. 121548
   Post Office Box 457
   Las Cruces, New Mexico 88004-0457
   (575) 647-3200 (office)
   (575) 647-1463 (facsimile)
   *Attorneys for Plaintiff*

- 19 -