## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

PATRICK S. DEBROUX,

      Plaintiff,

  vs.                                                          No. 2:20-cv-955

CHRISTINE WORMUTH, Secretary,[1]
DEPARTMENT OF THE ARMY,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment, filed August 27, 2021 (Doc. 30). The primary issue is whether Defendant has demonstrated that there is no genuine issue of material fact on any of Plaintiff Patrick Debroux's three claims and whether Defendant is entitled to a judgment as a matter of law. Having considered the parties' briefing and the applicable law, the Court finds that Defendant's motion is well-taken and, therefore, **GRANTED** as to all three claims.

## BACKGROUND[2]

### I.     Introduction

Patrick Debroux ("Plaintiff") has worked as an "Electronics Engineer" for the White Sands Missile Range (Lethality Survivability Human Interface and Future Combat Command) for 19

---

[1] Pursuant to Fed. R. Civ. P. 25(d) (automatic substitution of successor public official), former Acting Secretary of the Army John E. Whitley was substituted by Christine Wormuth.
[2] The Court omits references to supporting exhibits for ease of narration. The facts described here are undisputed unless noted otherwise.

years. As explained in further detail below, Plaintiff—as a 67-year-old white male—applied for two promotional positions in 2017 and 2018, for which he was not selected. The application process for both positions was largely the same. The Human Resources Office ("CPAC") first reviewed resume submissions and forwarded names of applicants who met the minimum qualifications to interview panels for selection. Although resumes were the primary basis by which one was selected for an interview, the interviewing panels did not consider resumes in scoring each candidate for the promotion. Instead, each panel interviewer—about four to six per interview—asked every interviewee the same eleven to twelve pre-formulated questions and scored each according to their responses. Upon completion of each interview, the interviewers would combine their scores and compute a mean score for each applicant, which they used to rank the candidates. For both positions for which Plaintiff applied, Dr. Patrick Baker was the final approving official, who Plaintiff contends had no meaningful role in the selection process.

## II.    Plaintiff was passed over for two promotions in favor of younger Hispanic applicants.

Around late-April of 2017, Plaintiff applied and interviewed for the position of Interdisciplinary Radio Frequency Analysis Technical Domain Lead. Four interviewers (two of Hispanic descent) interviewed four applicants (including Plaintiff), all of whom were over 40 years old except for Mr. Jorge Salinas. The panel unanimously agreed on Mr. Salinas, who is of Hispanic descent, as the most qualified. They selected him based on his demonstration of technical acumen, leadership experience, communication skills, and passion for the mission and people. While Plaintiff demonstrated technical experience in specific areas, the panel ranked him last because of his ineffective understanding of technical areas described in the job announcement, lack of specialized experience, and sub-par responses to questions associated with leadership, development, and mentorship.

In July 2018, Plaintiff applied for the position of Tools, Techniques, and Methodologies Engineer. Four interviewers (three of Hispanic descent) interviewed six minimally qualified candidates (including Plaintiff), of whom three were Hispanic. The panel ultimately selected Mr. Jorge Francisco Salas, a Hispanic under 40 years old. According to Cedric Baca, the selecting official, the panel agreed Mr. Salas was the most qualified, based on his vision for a successful Technical Domain Lead and how he would achieve that vision, as well as his leadership experience, communication skills, and desire to lead. Plaintiff received the lowest mean score, ranking last of six.

### III.   A decrease in Plaintiff's ratings and "paypool shares" coincided with his first filing of his unlawful discrimination complaint in August 2017.

Following each fiscal year, a supervisor rates Plaintiff's performance based on his accomplishments as applied to the organization's established criteria.[3] These criteria are made known to Plaintiff and incorporated into his Performance Plan at the beginning of each appraisal period. Relying on this rating, Plaintiff's supervisors then decide how many "paypool shares" (comparable to an annual bonus) to award him based on a Performance Element Scoring Table. On a scale of 100, supervisors rated Plaintiff at 75 in 2015 and 76.1 in 2016 to—following the filing of his discrimination complaint in August 2017—67.9 in late-2017 and 68.65 in late 2018. In fiscal year 2016, Plaintiff ranked seventh of twelve in his branch, falling to eight of ten in 2017, and dead last in 2018. Consequently, his annual performance bonus decreased from $3,038 and $3,030 in 2015 and 2016 to $1,557 and $1,712 in 2017 and 2018. Two pay periods, fiscal years 2017 and 2018, are of particular importance to Plaintiff's retaliation claim.

---

[3] These five elements include: technical competence, cooperation, communication, time and resource management, and customer relations.

3

During the 2017 fiscal year, Plaintiff administered a $3 million contract to the University of Texas at El Paso, headed a microwave radar analysis project, published a peer-reviewed document, mentored several people, and was the representative of the organization's post-doctoral program. For this work, Paige Mergler (a white 57-year-old female) rated Plaintiff as "successful" with a score of 67.9, for which an employee could receive up to one "paypool share," rating Plaintiff higher than a younger, Hispanic employee. Acting Division Chief Daniel Landin reviewed and signed off on Plaintiff's appraisal and rating based on Ms. Mergler's recommendation. Based on his score, Plaintiff was awarded one paypool share, which was the lowest paypool share score that Plaintiff had ever earned.

Plaintiff's duties did not materially change during the 2018 fiscal year. Brandon Herl became Plaintiff's supervisor in July 2018, and so Mr. Herl sought input about Plaintiff from his previous supervisors, Chris Rodriguez and Isabel Goode, who raised concerns about Plaintiff's timeliness to deadlines and communication as areas in need of improvement. Ultimately, Mr. Herl rated Plaintiff again as "successful" with a rating of 68.65 and awarded Plaintiff one paypool share. The parties agree that Mr. Herl did not consider Plaintiff undertasked, nor did he factor into the score the fact that Plaintiff had moved to another building.[4] As paypool manager for the 2018 fiscal year, Mr. Cedric Baca signed off on Plaintiff's appraisal and rating based on Mr. Herl's recommendation.

## DISCUSSION

---

[4] In January 2018, Plaintiff's then-supervisor, Maria Goode, learned of an incident that required suspension of Plaintiff's security clearance pending adjudication by the Consolidated Adjudication Facility. Without a security clearance, Plaintiff could not continue to work in Building 1628, and he was moved to Building 1631. When his clearance was reinstated, Plaintiff reported that he found Building 1631 to "be more comfortable" than the 1628 offices, and that he wished to remain in 1631. Because the 1631 offices were being transitioned to be used for contractors, Plaintiff elected to move to Building 1624.

Rule 56 of the Federal Rules of Civil Procedure provides for entry of summary judgement where "there is no genuine issue as to any material fact" and Defendant is "entitled to a judgement as a matter of law." Fed. R. Civ. P. 56(c). Where there is a failure of proof as to essential elements of the complainant's prima facie case, all other facts are rendered immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgement. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgement stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the moving party meets its burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of facts could find for the nonmovant." *Id.*

Accordingly, the Court applies this standard to each of Plaintiff's three claims of age discrimination, reverse racial discrimination, and retaliation.

## I.      Disparate Impact Discrimination on the Basis of Age[5]

First, Plaintiff asserts a disparate impact theory of age discrimination against Defendant. *See Smith v. City of Jackson*, 544 U.S. 228 (2005). The Age Discrimination in Employment Act, 29 U.S.C. § 621, prohibits an employer from discharging, failing to hire, or discriminating against any individual with respect to their compensation, terms, conditions, and privileges of employment

---

[5] The Court notes that, unlike a disparate *impact* claim, a disparate *treatment* claim is governed by the *McDonnell Douglas* three-part framework, which is used to analyze Plaintiff's two other claims below. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1277–78 (10th Cir. 2005), *overruled on other grounds*.

because of the individual's age. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1277–78 (10th Cir. 2005), *overruled on other grounds*. To survive a motion for summary judgement, Plaintiff must first establish a prima facie case of disparate impact discrimination on the basis of age. *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1200 (10th Cir. 2006). If Plaintiff satisfies this burden, the burden of production then shifts to Defendant to establish that its neutral policy is based on a reasonable factor other than age, which suffices to foreclose the claim. *Id*.

### A. Plaintiff failed to establish a prima facie case.

To establish a prima facie case of disparate impact discrimination under the ADEA, Plaintiff "must show that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Id*. "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" *Smith v. City of Jackson*, 544 U.S. at 240 (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)) (emphasis in original). Under this standard, Plaintiff argues that Defendant's policy of disregarding all written materials in favor of an interview process, combined with "purely subjective" interview questions stressing "recent" experience,[6] had the effect of promoting younger, less-qualified candidates above older, more qualified candidates.

The Court finds that Plaintiff has failed to identify a specific employment practice that is responsible for a statistical disparity between younger and older employees. In selecting employees to promote, the Army first chooses minimally qualified candidates based on their written materials

---

[6] Plaintiff repeatedly underscores that, despite the fact that time limitations were not a factor for consideration in the job announcement, three interview questions asked for experience "within the past five to seven years," and one asked for experience "within the last five years."

and then forwards these applicants to an interviewing panel. The interviewers ask each applicant the same pre-formulated questions and scores each according to established criteria. The fact that the panel stressed recent experience and did not consider resumes in selecting whom to promote does not, by itself, suggest any statistical disparity between younger and older employees. By making this argument, Plaintiff seems to suggest—without really saying it—that applicants under 40 years old have some form of advantage in this selection process. However, given that both younger and older minimally qualified applicants have experience within the past five to seven years, the Court has difficulty pinpointing any advantage younger applicants would have in this structure. Plaintiff's mere subjective belief that he was more qualified than the younger applicant is insufficient to raise a genuine issue of material fact that he was discriminated against for his age. *See Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369 (10th Cir. 1997).

Therefore, the Court finds that Plaintiff has not met his burden to establish a prima facie case of age discrimination.

**B. Even assuming Plaintiff established a prima facie case, Defendant forecloses this claim by establishing that its policy is based on reasonable factors other than age.**

The second step of evaluating a disparate impact discrimination claim on the basis of age is distinct from Title VII case law, in that the ADEA "contains language that significantly narrows its coverage by permitting any otherwise prohibited action where the differentiation is based on *reasonable factors other than age*." *Pippin v. Burlington Res. Oil and Gas Co.*, 440 F.3d 1186, 1200 (10th Cir. 2006) (emphasis added); *see* 29 U.S.C. § 623(f)(1). Therefore, Defendant may foreclose this claim by simply establishing reasonable factors other than age in the selection process for both promotions.

Here, CPAC independently reviews applications for a position to determine whether they meet the minimum criteria for the advertised position. CPAC then forwards the applicants to a

diverse selection panel for interviews, where each applicant is asked the same eleven to twelve questions. Each panel member awards an independent score, and the results are averaged to compute a mean score to rank the applicants. The interview process ensures that the applicants are not only to list their qualifications and experience, but also to present and communicate their skills as a leader and supervisor. Importantly, it is worth repeating that the selection process is designed to allow the interviewing panel to select from a group of *minimally qualified* applicants—all of whom have the requisite ability for the job. By ranking these applicants on their responses to interview questions—including ones that stress recent experience—the Army bases its promotions on reasonable factors other than age. Plaintiff fails to offer any admissible evidence[7] to the contrary.

Therefore, even assuming Plaintiff established a prima facie case for disparate impact age discrimination, the reasonableness of Defendant's policy forecloses Plaintiff's claim.

---

[7] In the "Undisputed Material Facts" section of his response, Plaintiff offers several pieces of inadmissible evidence—then refrains from returning to them in his legal argument, and the Court declines to make counsel's arguments for him. *See Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) (observing that the court "will not craft a party's argument for him").

First, Plaintiff offers the declarations of two fellow employees—Daniel Williams and Thomas Maxwell—who also were also not selected by Defendant for the same positions for which Plaintiff applied. Mr. Williams states that there's a "generational and cultural change" at the White Sands Missile Range giving assignments to younger people, most of whom are from the University of Texas, El Paso. Additionally, Mr. Maxwell states that Plaintiff should have received the position because he was more qualified. The Court finds that their testimony lacks foundation and is immaterial to the question of whether Defendant discriminated against Plaintiff. *See Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) ("It is the perception of the decision maker which is relevant."); *Pippin v. Burlington Res. Oil and Gas Co.*, 440 F.3d 1186, 1196–97 (10th Cir. 2006) ("[I]t is the perception of the decision maker which is relevant, not plaintiff's perception of [him]self.").

Second, Plaintiff states that in an attempt to console him, Jose Gonzalez (a supervisor within Plaintiff's organization) told Plaintiff "we are both old men now," and that this indicates that he thought Plaintiff was unsuitable for the position due to his age. The Court agrees with Defendant that this statement constitutes inadmissible hearsay and is immaterial to whether Defendant discriminated against Plaintiff. *See Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1126 (8th Cir. 2000) ("[S]tray remarks in the workplace, statements by nondecision makers, or statements by decisionmakers unrelated to the decisional process are not sufficient to establish a claim of discrimination.").

Third, Plaintiff claims that he "displayed a strong concern and displeasure at the decision made by the interviewing panel." Such a reaction to not being selected for a promotion, however, does not advance a material fact of consequence in his discrimination claim and is, therefore, immaterial.

## II.   Racial Discrimination

Second, Plaintiff asserts a disparate treatment claim of racial discrimination. Title VII makes it unlawful for an employer to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment on the basis of race. 42 U.S.C. § 2000e-2(a)(1). Claims of racial discrimination are subject to the three-part burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). First, Plaintiff must establish a prima facie case. *Notari v. Denver Water Dept.*, 971 F.2d 585, 587 (10th Cir. 1992). Second, if Plaintiff carries his initial burden by establishing a prima facie claim, the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the challenged workplace decision. *Id*. Third, if Defendant carries this burden, Plaintiff has an opportunity to prove that the legitimate reasons the defendant offered were merely a pretext for discrimination. *Id.* Accordingly, the Court proceeds by taking all three necessary steps below.

### A.  Plaintiff has failed to establish a prima facie case.

To establish a prima facie claim of disparate treatment based on race in a failure to promote context, the complainant must show: (i) the plaintiff is a member of a protected class; (ii) the plaintiff was qualified and applied for the position; (iii) despite the plaintiff's qualifications, he was not promoted to the position; and (iv) the promotional opportunity was filled or remained open. *Id*.; *see Serrano v. Veneman*, 410 F. Supp. 2d 1049, 1058 (D.N.M. 2005) (citing *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1306–07 (10th Cir. 2005)). As the parties do not genuinely dispute elements two through four, much of the analysis here turns on the first element, which requires two separate analyses.

First, in lieu of proving membership in a protected class, which Plaintiff cannot do as a Caucasian male, a plaintiff alleging "reverse discrimination" must instead establish background circumstances that support an inference that Defendant is "one of those unusual employers who discriminates against the majority." *Notari v. Denver Water Dept.*, 971 F.2d 585, 589 (10th Cir. 1992); *Mattioda v. White*, 323 F.3d 1288, 1293 (10th Cir. 2003). Second, as an alternative basis upon which plaintiffs may satisfy their prima facie burden, the Court must determine whether Plaintiff presented sufficient evidence to support specific facts to sustain a reasonable probability that his race proximately caused him to lose the promotions. *Notari*, 971 F.2d at 590.

### 1. Plaintiff has not established that the Army is an unusual employer who discriminates against the majority.

Plaintiff argues that "multiple credible independent facts" establish that the Army is an "unusual employer that discriminates against [non-Hispanic white people]." Plaintiff's argument here largely consists of statistics suggesting that most people (including his two supervisors) in his workplace and in the region more generally are Hispanic, making him an ethnic minority.

Assuming the validity of these statistics,[8] they are insufficient to establish the Army as an unusual employer that discriminates against white men. *See Jones v. Unisys Corp.*, 54 F.3d 624, 632 (10th Cir. 1995) ("Statistics taken in isolation are generally not probative of . . . discrimination."). These statistics provide no insight into Defendant's hiring practices, nor do they suggest that any Hispanic employee was selected over a more qualified non-Hispanic employee. In fact, numerous Caucasian males hold positions within Plaintiff's supervisory structure, including the panels that selected promotions, and each group of applicants included both Caucasian and Hispanic people. To survive summary judgement, Plaintiff must offer more than

---

[8] The Court has serious doubts as to Plaintiff's proffered statistics. For example, Plaintiff points to last names in a directory to prove that he is an ethnic minority in his workplace. Doc. 33-2.

conclusory allegations that the Army is an unusual employer that discriminates against white men. Overall, Plaintiff provides short shrift to this element, instead focusing more on the reasonable probability of proximate causation, explained below.

### 2. Plaintiff has not established a reasonable probability that his race proximately caused him to lose the promotion.

Citing two primary reasons, Plaintiff argues that but for the fact that he is white, he would have been selected for the positions to which he applied. First, despite his extensive experience and education, the selection panel did not consider his resume and instead based the entire score on answers to *subjective* interview questions. Second, with regards to the second position, Plaintiff cannot fathom how the person with the lowest pre-interview score received the position over him, having a middle-of-the-pack score by ranking third of six.[9] But for this "sham interview," Plaintiff argues he would have been one of the top two candidates based on his experience and education. The Court addresses each argument in turn.

First, the selection process for both promotions was not suggestive of racial animus or discrimination. Relying solely on written materials, CPAC deemed each of the applicants selected to interview as *minimally qualified* for both positions. This means that all candidates had sufficient experience and ability to take on the position if selected by the interviewing panel. The mere subjectivity of an interview, or Defendant's disregard for written application materials following the selection of a qualified applicant pool, is insufficient to suggest that Defendant preferred Hispanic over Caucasian applicants.

---

[9] In the "Undisputed Material Facts" section of his brief, Plaintiff argues that "based on the scores assigned to his written application materials by the HR office, he would have ranked second." Doc. 33 at 4. When one looks to the cited exhibit, however, Plaintiff is ranked *third* of six. Doc. 33-2. The Court struggles to understand how Plaintiff paints himself to be the most qualified for the position—saying that he had that the second highest pre-interview score—when he in fact was initially ranked right in the middle of the applicant pool.

Second, the fact that the applicant with the lowest ranking pre-interview score received the job, instead of Plaintiff who was ranked third of six, also does not suggest that Plaintiff did not receive the promotion due to his race. The Court cannot discern a clear disparity in the qualifications of the applicants from which to infer discriminatory intent. Moreover, it is insufficient to prove that Plaintiff may be more qualified than the other candidates, and that someone of a different race was promoted. *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369 (10th Cir. 1997). In short, Plaintiff points to no admissible evidence[10] suggesting that the panels were selecting people based on their minority status—no mention of an affirmative action plan or any agenda to increase racial diversity. Plaintiff cannot cite a single statement to demonstrate that the decision-makers here prioritized Hispanics over white people.

In sum, because Plaintiff (1) has not established that the Army is an unusual employer that discriminates against non-Hispanic white people and (2) has not met his burden to establish a reasonable probability that his race proximately caused him to not receive the promotion, Plaintiff has failed to establish a prima facie case of discrimination. *See Notari v. Denver Water Dept.*, 971 F.2d 585, 590 (10th Cir. 1992).

## B.  Defendant has proffered legitimate reasons for its employment decisions.

Even assuming Plaintiff has established a prima facie case of reverse racial discrimination, Defendant has proffered legitimate nondiscriminatory reasons for its employment decisions. Per the three-part *McDonnell Douglas* framework, Defendant is required to explain its actions in terms

---

[10] In the "Undisputed Material Facts" section of his brief, Plaintiff offers "as evidence that non-Hispanics were disfavored in the hiring process" an experience that he had as a recruiter for the White Sands Missile Range. Doc. 33 at 11. He supposedly found a Chinese applicant from the New Mexico State University, whose application was "summarily denied . . . without explanation" by management *Id.* Shortly thereafter, Plaintiff was asked to recruit applicants from the University of Texas at El Paso, from where the organization recruits most of its employees, thereby "indicating management's preference for hiring Hispanic students." *Id.* The Court finds that this evidence is immaterial, highly speculative and, in the alternative, insufficient to raise a genuine issue of material fact with regards to Plaintiff's prima facie case.

that are not facially prohibited by Title VII. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). Moreover, "it is not the duty of a court nor is it within the expertise of the courts to attempt to decide whether the business judgement of the employer was right or wrong. The court is not a super personnel department." *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983).

For the first position Plaintiff applied for in 2017, the panel selected Mr. Salinas based on his technical acumen, leadership experience and abilities, communication skills, and passion for the mission and people. Conversely, Defendant ranked Plaintiff last, citing Plaintiff's ineffective understanding of technical areas described in the job announcement, lack of specialized experience, and sub-par responses to questions associated with leadership, development, and mentorship. For the second position Plaintiff applied for in 2018, the panel selected Mr. Salas based on his vision for a successful Technical Domain Lead and how he would achieve that vision, as well as his ability to think and communicate at a strategic level both technically and organizationally.

The Court agrees that these reasons constitute nondiscriminatory and legitimate reasons for selecting other applicants over Plaintiff for the two positions.

### C.  Plaintiff has failed to establish pretext.

If Defendant provides a nondiscriminatory reason for the employment action, the burden shifts to Plaintiff to present sufficient evidence such that a reasonable juror could conclude that the proffered nondiscriminatory reason for the employment action is pretextual. *Simms v. Oklahoma ex rel. Dept. of Health and Substance Abuse Services*, 165 F.3d 1321, 1328 (1999) (citing *Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1534 (10th Cir. 1995)). "An employee may demonstrate pretext by showing the employer's proffered reason was so

inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004). Moreover, when evaluating the existence of pretext, the Court may consider the employer's policy and practice regarding employment of the plaintiff's class, disturbing procedural irregularities, and the use of subjective criteria. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002). Generally, a plaintiff may show pretext in one of three ways: "(1) with evidence that defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action taken by the defendant under the circumstances; or (3) with evidence that . . . he was treated differently from other similarly situated employees who violated work rules of comparable seriousness." *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).

Echoing his arguments above, Plaintiff argues that two factors lead to an inference of pretext here. First, he points to the purely subjective nature of the interview process and Defendant's disregard of written application materials when evaluating the candidates for selection. However, as explained above in the reasonable probability of proximate causation analysis, Defendant's disregard of written materials and the mere subjectivity of the interviewing process does not, by itself, suggest discriminatory animus and is insufficient to warrant a finding of pretext here.

Second, for the 2017 position, Plaintiff argues that the position he applied for was "a technical position, not a management position," suggesting that the reasons management selected the younger Hispanic applicant (based on his "vision," for example) did not match the position being advertised. Plaintiff argues that he was much more qualified, having over 30 years of experience in Radio Frequency analysis, having earned a Ph.D, and being well-published. Lastly,

Plaintiff argues the fact that a *minimally qualified* candidate with the lowest ranking pre-interview score received the job over him is surely suggestive of pretext.

Even if the position was more technical in nature, selecting the younger Hispanic applicant on intangible factors such as "vision" and "communication skills" is not suggestive of pretext. While Plaintiff attempts to characterize a mismatch between the skills required for the job and reasons why Defendant selected the other applicant, the Court finds that Defendant relied on a reasonable rationale for selecting one of its leaders. Additionally, Plaintiff's mere belief that he was more qualified than the other applicants is insufficient to find that he was discriminated against for being a white male. *See Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1369 (10th Cir. 1997). Additionally, because all the candidates were minimally qualified for the job, the fact that the candidate with the lowest ranking pre-interview score was selected for the position does not constitute a procedural irregularity.

For the reasons stated above, the Court finds that no reasonable juror could conclude that Defendant's proffered nondiscriminatory reasons for not selecting Plaintiff were pretextual.

## III.    Retaliation

Third, Plaintiff asserts a claim that Defendant retaliated against Plaintiff for filing an EEO complaint in August 2017 by subsequently decreasing his rating, bonus, and employment ranking. Title VII prohibits "employer retaliation on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Univ. of Tex Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013) (citing 43 U.S.C. § 2000e-3(a)). Such claims "require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* at 352. Like racial discrimination or reverse discrimination, claims of retaliation are subject to the three-part burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802 (1973). *See Stover v. Martinez*, 382 F.3d 1064, 1070–71 (10th Cir. 2004).

Accordingly, the Court addresses each below.

### A.   Plaintiff has established a prima facie case.

To state a prima facie Title VII retaliation claim, Plaintiff must show (1) that he engaged

in protected opposition to discrimination, (2) that a reasonable employee would have found the

challenged action materially adverse, and (3) that a causal connection existed between the

protected activity and the materially adverse action. *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th

Cir. 2019). While Defendant concedes that Plaintiff's filing of an EEO complaint is a protected

activity, Defendant disputes the material adversity and causal connection elements.

Plaintiff specifically alleges that Defendant retaliated against him for filing his August

2017 EEO complaint by drastically reducing Plaintiff's performance rating and bonus. In 2015

and 2016, Plaintiff earned ratings of 75 and 76.1, respectively. But after he filed his August 2017

EEO complaint, his ratings dropped to 67.9 in late-2017 and 68.65 in 2018. Similarly, his annual

performance bonuses dropped from $3,038 and $3,030 in 2015 and 2016—to $1,557 and $1,712

in late-2017 and 2018, respectively. His overall ranking as compared to other employees similarly

dropped from seven of twelve in 2016—to eight of ten in 2017 and dead last in 2018.

### i.   Materially Adverse Employment Action

Nowhere in his briefing does Plaintiff attempt to elaborate on the second element: that "a

reasonable employee would have found the challenged action materially adverse." Because

Plaintiff's retaliation claim revolves around the decrease in his rating, bonus, and ranking

following his August 2017 EEO complaint, the Court assumes that this constitutes the materially

adverse employment action asserted by Plaintiff.

The Tenth Circuit liberally defines what constitutes an adverse employment action. *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998). An employment action is "materially adverse" when its infliction would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Reinhardt v. Albuquerque Pub. Sch. Bd. Of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010) (citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "[P]etty slights, minor annoyances, and simple lack of good manners" will generally not be material. *Burlington*, 548 U.S. at 68.

In arguing that such decrease does not constitute a materially adverse employment action, Defendant cites to two cases reaching similar results. *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215 (10th Cir. 2006); *Lujan v. Johanns*, 181 F.Appx. 735, 737 (10th Cir. 2006). Both cases, however, predate the Supreme Court's *Burlington Northern* decision that changed the adverse employment action test from "a significant change in employment status" to "possible dissuasion of an employee from making or supporting a charge of discrimination." *See Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012) ("The district court erred in relying on a pre-*Burlington Northern* case, *Haynes v. Level 3 Communications* . . . for the proposition that the disciplinary action taken against Ms. Bertsch was materially adverse . . . ."), *abrogated on other grounds by Lincoln v. BNSF Rwy. Co.*, 900 F.3d 1166, 1182 (10th Cir. 2018).

The Court also recognizes that at least two other district courts in the Tenth Circuit have held that receiving a lower performance rating shortly after commencing protected activity does not constitute a materially adverse employment action. *See Brenna v. Salazar*, 2010 WL 582357, at *12 (D. Colo. Feb 17, 2010); *Maxwell v. Whitley*, No. 2:18-cv-00824-KMR-SMV, 2021 WL 3510822, at *7 (D.N.M. August 10, 2021) (Riggs, J.). In *Brenna*, the district court relying on *Burlington Northern* found that the performance appraisal constituted a "petty slight," in part

17

because the plaintiff did not present evidence that the rating resulted in any negative consequences to her compensation. *Brenna*, 2010 WL 582357, at *12. Curiously, the district court in *Maxwell* faced virtually the same facts as the ones at bar—involving the same unit and some of the same people, such as Ms. Goode and Mr. Baca—and found that a "successful" appraisal, like Plaintiff's here, did not constitute an adverse employment action. *Maxwell*, 2021 WL 3510822, at *7. But the court in that case relied mostly on cases that predated *Burlington Northern* and refrained from directly or indirectly citing the Supreme Court's "possible dissuasion" standard.

It bears repeating that the Court's inquiry here is whether receiving a sub-average performance rating and subsequent decrease in bonus would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The facts at hand are distinguishable from *Brenna*, where the plaintiff did not receive any negative financial consequences as a result of her poor performance rating. *Brenna*, 2010 WL 582357, at *12. Even though he was not *entitled* to his bonus, Plaintiff had consistently received payment over $3,000 for two years, which was then sliced in half following his EEO activity.  Therefore, the Court finds that proper reliance on the *Burlington Northern* standard compels the result that a notable decrease in one's performance appraisal, followed by a significant drop in one's bonus, is not a "petty slight" and would have dissuaded a reasonable worker from filing a discrimination complaint. Therefore, the Court finds that Plaintiff has established he suffered a materially adverse employment action.

### ii.  Causal Connection

In his briefing, Plaintiff offers a lone paragraph in support of this element, citing one case from the District of Kansas. Specifically, Plaintiff argues that the temporal proximity between his

filing of the August 2017 complaint and the drop in his bonus, rating, and ranking in "late-2017"

suffices to raise a genuine issue of material fact as to whether Defendant retaliated against Plaintiff.

"Title VII retaliation claims must be proved according to traditional principles of but-for

causation," which "requires proof that the unlawful retaliation would not have occurred in the

absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr.*

*v. Nassar*, 570 U.S. 338, 360 (2013). To establish the causal connection here, Plaintiff must show

"that the decisionmakers took action against him out of a desire to retaliate for his formal

discrimination complaints." *Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019). Plaintiff may

establish this element by demonstrating close temporal proximity between the protected opposition

(here, filing an EEO complaint) and the adverse employment action. *Conner v. Schnuck Markets,*

*Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997). On this topic, the Tenth Circuit has opined:

> In addressing retaliation claims, our cases have never established a precise temporal
> line for purposes of determining whether the requisite proximity is present to
> establish—at the prima facie stage—the causation element. It appears clear that, if
> the adverse action occurs in a brief period up to one and a half months after the
> protected activity, temporal proximity alone will be sufficient to establish the
> requisite causal inference; but it is equally patent that if the adverse action occurs
> three months out and beyond from the protected activity, then the action's timing
> alone will not be sufficient to establish the causation element. *See Anderson v.*
> *Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) ("[W]e have held that a
> one and one-half month period between protected activity and adverse action may,
> by itself, establish causation. By contrast, we have held that a three-month period,
> standing alone, is insufficient to establish causation." (citations omitted)).
> However, where along the temporal line beyond one and one-half months but short
> of three months, the adverse action's timing ceases to be sufficient, standing alone,
> to establish the requisite causal inference is less than pellucid. *See, e.g., Meiners v.*
> *Univ. of Kan.,* 359 F.3d 1222, 1231 (10th Cir.2004) (suggesting that "two months
> and one week" was "*probably* too [long] ... to establish causation by temporal
> proximity alone" (emphasis added)).

*Conroy v. Vilsack*, 707 F.3d 1163, 1181–82 (10th Cir. 2013). Therefore, unless Plaintiff can establish close temporal proximity—as explained by the opaque standard above—Plaintiff must adduce additional evidence to prove causation.[11] *Conner*, 121 F.3d at 1395.

Ambiguity exists as to whether temporal proximity alone is sufficient for Plaintiff to establish a causal connection here. Plaintiff's EEO activity started when he first reached out to the office on August 23rd, 2017, and he submitted an official complaint on December 5th, 2017. Doc. 32-1 at 1. Meanwhile, the "successful" performance appraisal that led to his decreased bonus and ranking—here, the adverse action—was conducted "after September 30, 2017." Doc. 30-4 at 4. Thus, due to the ambiguity of the phrase "after September 30, 2021," the adverse action could have theoretically occurred within one and a half months of the protected activity, starting on August 23rd. Therefore, giving Plaintiff the benefit of the doubt, the temporal proximity suffices to establish a causal connection. *Id.* at 1181–82.

In sum, because of the Court's finding of a materially adverse action and causal connection, Plaintiff has established a prima facie case of retaliation.

### B.  Defendant has proffered legitimate reasons for its employment decisions.

Next, Defendant is required to explain its actions in terms that are not facially prohibited by Title VII. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). For the evaluation below, the Court relies on the legal standard set forth above under Section II.B touching on Defendant's legitimate, nondiscriminatory reasons analysis for not selecting Plaintiff for both positions.

---

[11] Defendant claims that Plaintiff has failed to produce any evidence suggesting that Mr. Baca, Ms. Mergler, or Mr. Herl had any knowledge of Plaintiff's prior EEO activity when they conducted his performance appraisals. Even if Plaintiff did provide such evidence, which he did not, Defendant argues that this would be insufficient to establish a causal connection. Without Defendant's further elaboration on this point, the Court finds this fact irrelevant to the finding of a causal connection here.

For the 2017 and 2018 fiscal years, Paige Mergler and Brandon Herl reviewed Plaintiff's objectives and accomplishments, and assigned his rating using the Performance Pay Plan Element Scoring Table and Instructions—the organization's established criteria used to score each employee. For the 2018 fiscal year in particular, Plaintiff's supervisors cited timeliness in meeting deadlines and communication as areas in need of improvement. The Court finds that rating Plaintiff according to this standard operating procedure reasonably explains Plaintiff's two evaluations in terms that are not facially prohibited by Title VII.

Therefore, Defendant has met its burden to proffer legitimate nondiscriminatory reasons for its employment action.

### C.  Plaintiff has failed to establish sufficient evidence of pretext.

Given that Plaintiff has established a prima facie case of retaliation and that Defendant responded with legitimate nondiscriminatory reasons for its decisions, Plaintiff must then "demonstrate pretext by showing the employer's proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004). The Court relies on the legal standard set forth above in Section II.C relating to the question of whether Plaintiff established pretext with regards to his reverse racial discrimination claim.

Plaintiff summarily and conclusively argues that "the reasons provided by defendant for a drastic change in Plaintiff's monetary performance rating and bonus were merely pretext for its retaliatory intent against Plaintiff." Doc. 33 at 19. Aside from the "stark contrast" between his statistics before and after the August 2017 complaint, Plaintiff offers no explanation for why rating him according to established criteria served as mere pretext for Defendant's purported retaliatory intent. While sufficient to establish his prima facie case, the "stark contrast" by itself is insufficient

to demonstrate that the Army's reasons were "so inconsistent, implausible, incoherent, or contradictory that [they are] unworthy of belief." *Id.*

Therefore, the Court finds that Plaintiff has failed to establish sufficient admissible evidence[12] of pretext to withstand summary judgement. *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1211 (10th Cir. 2007) ("The fact finder must be able to conclude discrimination was a determinative factor in the employer's action—simply disbelieving the employer is insufficient.").

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, Defendant is entitled to summary judgement on Plaintiff's age discrimination, racial discrimination, and retaliation claims under the ADEA and Title VII.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgement, Doc. 30, is **GRANTED**, and all three claims are hereby **DISMISSED WITH PREJUDICE**.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[12] Plaintiff again cites inadmissible evidence in his undisputed material facts—but then refrains from later referring to it in his legal argument. In particular, he claims that his supervisor, Paige Mergler, was apologetic during her call to discuss his "successful" performance review. The Court agrees that this evidence is immaterial, speculative, and insufficient to demonstrate that she thought the performance review was unsupported, incorrect, or discriminatory in any fashion.